UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| THE TENNESSEE WALKING HORSE NATIONAL CELEBRATION ASSOCIATION *et al.*, | Case No. 2:24-cv-143 |
| Plaintiffs, | District Judge Matthew J. Kacsmaryk |
| v. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE *et al.*, | |
| Defendants. | |

**DEFENDANTS' MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 1

I.      There is No Connection Between This Case and the Amarillo Division. ................................ 2

II.     The Fifth Circuit Requires Intra-District Transfer Where A Case Lacks Any Connection to the Division in Which It Is Filed. ............................................................ 3

III.    District Courts in This District and Other Districts in Texas Routinely Transfer Cases That Lack Any Connection to the Division in Which They Were Filed. ........................ 8

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**CASES**

*Air Force Major v. Austin*,
   No. 4:22-cv-0248-P, 2022 WL 3698302 (N.D. Tex. Apr. 4, 2022) ......................................................9

*Barrows v. Jackson*,
   346 U.S. 249 (1953) ........................................................................................................................3

*Chapman v. Dell, Inc.*,
   No. EP–09-cv-7–KC, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009)............................................8, 9

*Coffey v. Van Dorn Iron Works*,
   796 F.2d 217 (7th Cir. 1986) ...........................................................................................................7

*Datascape, Ltd. v. Dell Techs., Inc.*,
   No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019)..........................................9

*Dobbin Plantersville Water Supply Corp. v. Lake*,
   108 F.4th 320 (5th Cir. 2024) ..........................................................................................................5

*Hanby v. Shell Oil Co.*,
   144 F. Supp. 2d 673 (E.D. Tex. 2001) ..............................................................................................8

*Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*,
   321 F.2d 53 (5th Cir. 1963) .............................................................................................................4

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*,
   921 F. Supp. 375 (W.D. La. 1996)....................................................................................................9

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ..................................................................................................*passim*

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...........................................................................................................4

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................................................. 3, 4, 5, 6

*Inclusive Communities Project, Inc. v. Dep't of Treasury*,
   946 F.3d 649 (5th Cir. 2019) ...........................................................................................................5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................................5

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) ...........................................................................................................5

*Stewart Orga., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ............................................................................................................5, 7

*Zuazua v. C.R. Eng. Inc.*,
    CIV. A. No. SA-21-CA-0544-FB, 2021 WL 8442046 (W.D. Tex. Aug. 20, 2021) ...............8

**STATUTES**

15 U.S.C. §§ 1821 *et seq.*................................................................................................................1

28 U.S.C. § 124 ...............................................................................................................................7

28 U.S.C. § 1391 .............................................................................................................................4

28 U.S.C. § 1404 ......................................................................................................................*passim*

**REGULATIONS**

Horse Protection Amendments,
    89 Fed. Reg. 39,194 (May 8, 2024) ...................................................................................1

**RULES**

Local Rule 3-1................................................................................................................................7

**OTHER AUTHORITIES**

Calendar, The Walking Horse Report,
    https://www.walkinghorsereport.com/calendar...................................................................3

Tennessee Walking Horse National Celebration,
    https://www.twhnc.com....................................................................................................2, 3

U.S. Dist. Ct. for N.D. Tex.,
    https://www.txnd.uscourts.gov/location/amarillo ..............................................................8

U.S. Dist. Ct. N.D. Tex., *Electronic Case Filing, Opening a Civil Case / Filing a Complaint*
    (updated Mar. 2022),
    https://www.txnd.uscourts.gov/sites/default/files/documents/ecfCaseOpen.pdf.........................7

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed. updated 2024) ..........................................7

**INTRODUCTION**

The plaintiffs in this case lack any connection to the Amarillo Division of the Northern District of Texas, and this Court should therefore transfer this case to the Dallas Division, where the individual plaintiffs reside. The lead plaintiff, non-profit entity Tennessee Walking Horse National Celebration Association ("TWHNCA"), is located—and hosts its namesake event—in Tennessee. Neither of the two individual plaintiffs, Kimberly Lewis or Tom Gould, reside in or have any apparent connection to the Amarillo Division; instead, they reside in the Dallas Division, according to representation from Plaintiffs' counsel. Therefore, the evidence necessary, among other things, to establish the individual plaintiffs' injuries for purposes of Article III standing—which the plaintiffs bear the burden of proving at the summary judgment stage—would be located (if at all) in the Dallas Division.

The Fifth Circuit instructs district courts to transfer cases where, as here, the plaintiff lacks a substantial connection to the chosen division, and any evidence would be located elsewhere, to the division in which the venue-establishing plaintiff actually resides. Defendants therefore respectfully move to transfer this case from the Amarillo Division to the Dallas Division, pursuant to 28 U.S.C. § 1404(a), based on Plaintiffs' counsel's representation that Ms. Lewis and Mr. Gould reside in the Dallas Division and Plaintiffs' apparent preference to bring this case in this District.

**BACKGROUND**

Plaintiffs bring a facial challenge to several provisions of a final rule promulgated by the United States Department of Agriculture ("USDA") on May 8, 2024 that implements the Horse Protection Act, 15 U.S.C. §§ 1821 *et seq.* ("HPA"), which forbids the showing or selling of sored horses. Horse Protection Amendments, 89 Fed. Reg. 39,194 (May 8, 2024).[1] Plaintiffs assert eleven claims alleging procedural and substantive violations of the Administrative Procedure Act ("APA") and constitutional violations, including that USDA regulations and policies exceed the USDA's statutory authority; are

---

[1] The May 8, 2024 final rule replaces existing HPA regulations and will take full effect on February 1, 2025. *See* 89 Fed. Reg. at 39194. On March 11, 2024, three horse trainers filed suit in the U.S. District Court for the Western District of Tennessee challenging several provisions of current HPA regulations. *Wright et al., v. Vilsack et al.*, No. 2:24-cv-2156 (W.D. Tenn. filed March 11, 2024).

1

arbitrary and capricious; and violate the Fifth Amendment's Takings Clause and Due Process Clause. *See* Compl. ¶¶ 198–264, ECF No. 1.  Specifically, Plaintiffs challenge provisions prohibiting certain action devices, types of pads and wedges, and substances that cause or can reasonably be expected to cause a horse to be sore; modifying the "Scar Rule," which identifies criteria for determining whether a horse is sore within the meaning of the HPA's definition of that term; establishing a procedure by which horse owners and trainers can appeal disqualification decisions to the Administrator of the Animal and Plant Health Inspection Service ("APHIS"); and replacing Designated Qualified Persons ("DQPs"), who are third-party inspectors employed and compensated by the industry, with APHIS-authorized inspectors.  Plaintiffs also assert one claim of failure to comply with the Regulatory Flexibility Act.  *Id.* ¶¶ 265-69.  They seek declaratory and injunctive relief related to facially invalidating the applicable regulations and compensation for the alleged "regulatory taking" of certain horses, and they request that the Court vacate and set aside the entire final rule.  *Id.*, Prayer for Relief (a)-(u).

## I. There is No Connection Between This Case and the Amarillo Division.

This case should be transferred to the Dallas Division because it lacks any apparent connection to the Amarillo Division.  First, none of the three plaintiffs in this suit resides in this Division. TWHNCA is headquartered in Shelbyville, Tennessee, *see* Tennessee Walking Horse National Celebration, https://www.twhnc.com (last visited Sept. 6, 2024), while both Mr. Gould and Ms. Lewis reside in the Dallas Division of the Northern District of Texas, according to Plaintiffs' counsel's representation.[2]

Second, none of the events giving rise to this case occurred in this Division.  Mr. Gould's and Ms. Lewis's primary claimed injury is the devaluation of their horses, none of which they assert is located in the Amarillo Division.  *See* Compl. ¶¶ 29, 30, 201, 208.  TWHNCA's primary claimed injury is that its "[h]orse shows will be shut down," *id.* ¶¶ 201, 208, all three of which are located in

---

[2] Counsel for Defendants reached out to counsel for Plaintiffs, who stated via email that neither Ms. Lewis nor Mr. Gould resides in the Amarillo Division and that, instead, they both reside in the Dallas Division (which is absent from the Complaint, *see* Compl. ¶¶ 29, 30).  Accordingly, Defendants proceed under the assumption that Mr. Gould and Ms. Lewis reside in the Dallas Division for the purpose of this Motion.

Shelbyville, Tennessee, *see* Tennessee Walking Horse National Celebration, http://www.twhnc.com (last visited Sept. 6, 2024), and that its employees in Shelbyville, Tennessee "will lose their jobs," Compl. ¶¶ 201, 208. Plaintiffs also gesture broadly at harms to competition within the Tennessee Walking Horse "industry," *see, e.g., id.* ¶¶ 226, 232, but there are no Tennessee Walking Horse shows located in this Division, *see* Calendar, The Walking Horse Report, https://www.walkinghorsereport.com/calendar (last visited Sept. 6, 2024). To the best of Defendants' knowledge, there has never been a Tennessee Walking Horse show in this Division. *See id.* Indeed, as the name of the horse breed suggests, most Tennessee Walking Horse shows are located in Tennessee.[3] *See id.* In any event, Plaintiffs cannot bring claims on behalf of an industry. *See Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.").

## II. The Fifth Circuit Requires Intra-District Transfer Where A Case Lacks Any Connection to the Division in Which It Is Filed.

Under § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc). Section 1404(a) applies "as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (per curiam). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants" to venues where "[t]he only connection between th[e] case and the [chosen forum] is

---

[3] During the meet-and-confer process, counsel for Defendants repeatedly inquired as to whether there is a connection between Plaintiffs and the Amarillo Division. Counsel for Plaintiffs stated that "according to records maintained by the Tennessee Walking Horse Breeders' and Exhibitors' Association, there are 44 Tennessee Walking Horses who are registered to owners that reside in the city of Amarillo." The plaintiffs do not purport to be one of those owners.

plaintiffs' choice to file there." *In re Volkswagen*, 545 F.3d 313, 318 (citation omitted). By filing in a division that has no connection to the parties or claims in this case, Plaintiffs "abus[e] their privilege under § 1391." *Id.* at 313.

Accordingly, this Circuit has concluded that denying transfer between divisions "where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum" is "patently erroneous." *In re Radmax*, 720 F.3d at 290 (footnote and citation omitted). Because no party resides within this Division, and none of the "events or omissions giving rise to the claim occurred" here, 28 U.S.C. § 1391(e)(1), transfer to a division with a connection to this case— here, the Dallas Division, based on Mr. Gould's and Ms. Lewis's residence there—is "clearly more convenient." *In re Radmax*, 720 F.3d at 288 (quoting *In re Volkswagen*, 545 F.3d at 315).

The Fifth Circuit has set out an eight-factor balancing test for evaluating when transfer is appropriate under 28 U.S.C. § 1404(a). *In re Radmax*, 720 F.3d at 288 (citing *In re Volkswagen*, 545 F.3d at 315). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen*, 545 F.3d at 312. If the answer is yes, as is the case here because the case could have been brought in the Dallas Division, where the only venue-establishing plaintiffs reside, the Court must then determine whether the party that "seeks the transfer" has shown "good cause," meaning that it has "demonstrate[d] that the transferee venue is clearly more convenient." *Id.* at 315 (quoting *Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). The Court may consider any number of factors, including "private interest factors" such as "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). The Court may also consider "public interest factors," such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the

4

application of foreign law." *Id.* These factors "are not necessarily exhaustive or exclusive." *Id.* Further, the public factors collectively—which include "systemic integrity and fairness," *Stewart Orga., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)—"may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

The eight factors are either neutral or cut strongly in favor of transfer to the Dallas Division.

The private interest factors—which largely govern evidentiary and administrative matters—favor transfer. The substantive merits of this case will largely be decided on an administrative record, and so for those issues, questions of access to proof and witnesses are neutral. Plaintiffs must, however, affirmatively establish their injury-in-fact as a constitutional requisite for Article III standing, and at the summary judgment phase, that must be established through competent evidence. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 327 n.4 (5th Cir. 2024). "[E]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation . . . Thus, at summary judgment, [plaintiff] can't rely on 'mere allegations'; it 'must set forth by affidavit or other evidence specific facts' supporting standing." *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (internal citation and quotation marks omitted). This requires Plaintiffs to establish, among other things, that Plaintiffs own Tennessee Walking Horses, Compl. ¶¶ 29, 30, 198–215, that those horses will be subject to the new regulations, *id.*, that those horses were bred to perform or perform with pads and action devices, *id.*, that those horses will be unable to compete in the Performance Division of competition if the new regulations take effect, *id.*, that those horses will be rendered economically worthless if the new regulations take effect, *id.*, and that Plaintiffs use substances prohibited by the new regulations on those horses, *id.* ¶¶ 216–26. The sources of that proof presumably reside in the same place that Plaintiffs reside—in the Dallas Division—not the Amarillo Division.

Nor is Plaintiffs' evidentiary burden limited to standing. Additionally, any sources of proof to support Plaintiffs' request for "[c]ompensation for the regulatory taking of Plaintiffs' horses who

5

compete in the Performance Division in an amount to be proved at trial," *see id.*, Prayer for Relief (d), if appropriate, would be located where Plaintiffs' horses are located, which, as discussed, is presumably in the Dallas Division, not in the Amarillo Division. Moreover, while Plaintiffs suggest that a preliminary injunction may be appropriate, *see id.*, Prayer for Relief (b), and to be clear, it is not, if such a motion is filed, the sources of Plaintiffs' purported proof of irreparable injury and balance of the equities, will, again, be found outside the Amarillo Division in a Division with an actual connection to Plaintiffs. In short, the private interest factors weigh in favor of transfer.

The public interest factors also weigh heavily in favor of transferring this case to the Dallas Division. The first three public interest factors are neutral. Neither the Dallas Division nor the Amarillo Division is more familiar with the federal statute and regulations at issue here. Nor are Defendants aware of any difference in the relative congestion of the dockets between the two Divisions. *See In re Radmax*, 720 F.3d at 288. Nor will transfer delay this case, as Defendants are not seeking to transfer this case out of this District, and have communicated to counsel for Plaintiffs that they are willing to brief summary judgment on a schedule that would allow this case to be decided before the new regulations take effect on February 1, 2025. Moreover, Defendants are seeking to transfer this case at its very outset, and the Fifth Circuit has emphasized that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *Id.* at 289. However, the fourth public interest factor of "the local interest in having localized interests decided at home," strongly favors transfer to the Dallas Division, where Mr. Gould and Ms. Lewis reside, because venue is grounded on their residence there. *Id.* at 288 (quoting *In re Volkswagen*, 545 F.3d at 315). This factor favors transfer to the Dallas Division because the Amarillo Division has no "local interest" in having the case adjudicated here. *Id.* (quoting *In re Volkswagen*, 545 F.3d at 315). No party resides in or claims to suffer an injury based on events that occurred in this Division. *In re Volkswagen*, 545 F.3d at 318. "In short, there is no relevant factual connection to" this Division. *Id.* In such circumstances, it is an abuse of discretion to "deny[] transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the

6

transferor forum" and the relevant sources of proof are located in the transferee forum. *In re Radmax*, 720 F.3d at 290 (footnote omitted).

Finally, even if the eight factors did not clearly favor transfer to Dallas—which they do—systemic integrity and fairness favor transfer. *See Stewart Org.*, 487 U.S. at 30 ("The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'"); Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed. updated 2024) ("The interest of justice factor encompasses public interest factors aimed at systemic integrity and fairness"); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) ("The 'interest of justice' analysis relates, then, to the efficient functioning of the courts."). Not only is there no public interest in having this matter litigated in this Division, the public's interest in systemic integrity and fairness would be harmed if plaintiffs can ground venue in a district based on their residence or where events giving rise to their claims occurred, but nevertheless choose a division with no connection whatsoever to the suit. The process for judicial divisions within a judicial district allows for the fair and equitable distribution of cases, while also permitting cases to be heard as geographically close to the relevant events and parties as possible. Allowing parties to choose divisions to which they lack any connection disrupts this balance.

Moreover, this careful balance is reflected in the Local Rules of this District. Local Rule 3-1 incorporates by reference the ECF Administrative Procedures Manual, which in turn, instructs filers to "[s]elect the *appropriate* divisional Office for this case" to open a new civil case and warns filers that "[i]t is critical that you select the *appropriate* divisional office, as an error will delay your case." U.S. Dist. Ct. N.D. Tex., *Electronic Case Filing, Opening a Civil Case / Filing a Complaint* at 3 (updated Mar. 2022), https://www.txnd.uscourts.gov/sites/default/files/documents/ecfCaseOpen.pdf (emphasis added); L.R. 3-1. The best way to interpret the word "appropriate" here is the division within the District that has a connection to the case. This is supported by 28 U.S.C. § 124(a)(5), which defines the Amarillo Division as "compris[ing] the counties" of 26 enumerated counties, and the Amarillo Division's page of the District's website, which lists those same counties as the "[c]ounties [s]erved"

7

by the Division, *see* U.S. Dist. Ct. for N.D. Tex., https://www.txnd.uscourts.gov/location/amarillo (last visited Sept. 9, 2024). Indeed, it would strain logic and disrupt the fair and equitable distribution of cases if plaintiffs that reside in the Dallas Division can choose to file in the Fort Worth, Abilene, San Angelo, Amarillo, Wichita Falls, or Lubbock Divisions with no connection to the Division whatsoever.

### III. District Courts in This District and Other Districts in Texas Routinely Transfer Cases That Lack Any Connection to the Division in Which They Were Filed.

Following the Fifth Circuit's instructions, courts routinely find that where, as here, a case has "no apparent connection" to the division in which it was filed, it is properly transferred to the division in which venue is grounded. *See Zuazua v. C.R. Eng., Inc.*, CIV. A. No. SA-21-CA-0544-FB, 2021 WL 8442046, at *3 (W.D. Tex. Aug. 20, 2021) (transferring venue to another division upon finding that "this case has no apparent connection to San Antonio," where it was filed); Order at 8, *Campbell v. Garland*, No. 3:19-CV-1887-L (N.D. Tex. July 21, 2021), ECF. No. 50 (Lindsay, J.) (transferring a suit under § 1404(a) after finding "no apparent connection between this case and the Dallas Division"); Order, *Campbell v. Barr*, No. 3:20-CV-1605-G (N.D. Tex. June 19, 2020), ECF No. 6 (Fish, J.) ("There being no apparent connection between this case and this division, on the court's own motion, this case is TRANSFERRED to the Fort Worth Division . . . ."); Show Cause Order, *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers*, No. 3:22-CV-83-M (N.D. Tex. Jan. 18, 2022), ECF Nos. 10, 15 (Lynn, C.J.) (transferring a suit to the Fort Worth Division after issuing an order to show cause and determining the suit had little, if any, connection to the Dallas Division); *see also* Order of Transfer, *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal Air Rail & Transp. Workers*, No. 3:22-CV-83-M (N.D. Tex. Jan. 20, 2022), ECF No. 15 (Lynn, C.J.).

Consistent with the Fifth Circuit's decisions in *Radmax* and *Volkswagen*, district courts have explained that "[w]here the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *see also, e.g., Chapman v. Dell, Inc.*, No. EP–09-cv-7–KC, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009) (deference to a plaintiff's choice of forum is lessened when

8

it does not reside in the chosen forum and when "'the operative facts of the dispute occur[red] outside the [plaintiffs'] chosen forum.'" (*quoting Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 384 (W.D. La. 1996))). And, as here, where certain factors "favor[] transfer[] [others a]re neutral, and no factor favor[s] the plaintiff's chosen venue," transfer should be granted. *Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *1 (W.D. Tex. June 7, 2019) (Albright, J.) (citing *In re Radmax*, 720 F.3d at 288–90).

Therefore, as another Court in this District recently held, when the plaintiff asserting venue "is a resident of Dallas" and "fails to allege any facts that could establish a connection between this case and [the selected] Division," then the "case belongs in the Dallas Division." Order, *Air Force Major v. Austin*, No. 4:22-cv-0248-P, 2022 WL 3698302, at *1 (N.D. Tex. Apr. 4, 2022) (Pittman, J.) (citation omitted) (explaining that judges in each Division within the District "have a duty to analyze whether the cases on their dockets are being filed in the proper division").

## CONCLUSION

For the reasons set forth above, this case should be transferred to the Dallas Division.

Dated: September 11, 2024              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Allyson R. Scher*
ALLYSON R. SCHER (DC Bar No. 1616379)
CRISTEN C. HANDLEY (MO Bar No. 69114)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Telephone: (202) 514-9836
Facsimile: (202) 616-8460
Email: allyson.r.scher@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Defendants conferred with counsel for Plaintiffs pursuant to the requirements of Local Rule 7.1(a). Plaintiffs will oppose the motion. On August 7, 2024, Counsel for Defendants, Allyson Scher, emailed Counsel for Plaintiffs, Patrick Philbin and John Coghlan, asking whether Plaintiffs Kimberly Lewis and Tom Gould reside in the Amarillo Division. On August 9, Mr. Coghlan responded to Ms. Scher and Cristen Handley that neither Plaintiff resides in the Amarillo Division (Plaintiffs later confirmed that both individuals reside in the Dallas Division). On August 29, Counsel for Defendants, Allyson Scher, Cristen Handley, and Joseph Borson, and counsel for Plaintiffs, Patrick Philbin and John Coghlan, discussed by phone Defendants' view that transfer is appropriate in this case. Counsel for Defendants explained that applicable case law supports their position. Counsel for Plaintiffs requested that counsel for Defendants share those cases with them, and counsel for Defendants subsequently did so via email. Counsel for Defendants also asked counsel for Plaintiffs if there was a connection between this lawsuit and the Amarillo Division, which counsel for Plaintiffs declined to answer. On September 6, Mr. Coghlan responded by email that he "do[es] not agree that [the cited cases] stand for the proposition that transfer is appropriate . . ." Mr. Coghlan also responded that "[w]e can share that, according to records maintained by the Tennessee Walking Horse Breeders' and Exhibitors' Association, there are 44 Tennessee Walking Horses who are registered to owners that reside in the city of Amarillo." As noted in this motion, however, the plaintiffs in this case do not purport to be one of those owners. Accordingly, notwithstanding these multiple conferral efforts, the parties were unable to reach agreement on this motion.

*/s/ Allyson R. Scher*
ALLYSON R. SCHER