UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| THE TENNESSEE WALKING HORSE NATIONAL CELEBRATION ASSOCIATION *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE *et al.*, <br><br> Defendants. | Case No. 2:24-cv-143 <br><br><br> District Judge Matthew J. Kacsmaryk |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

I.    Plaintiffs' Opposition Demonstrates That There is No Connection Between This Suit and the Amarillo Division. ........................................................................................... 1

II.    The Dallas Division is Clearly More Convenient Under the Fifth Circuit's § 1404 Analysis. ........................................................................................................................ 2

III.    District Courts in This District and Other Districts in Texas Routinely Transfer Cases That Lack Any Connection to the Division in Which They Were Filed. ..................... 9

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Air Force Major v. Austin*,
  No. 4:22-cv-0248-P, 2022 WL 3698302 (N.D. Tex. Apr. 4, 2022) ....................................................... 2

*Chapman v. Dell, Inc.*,
  No. EP-09-CV-7-KC, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ................................................. 10

*Dobbin Plantersville Water Supply Corp. v. Lake*,
  108 F.4th 320 (5th Cir. 2024) .............................................................................................................. 4

*Hanby v. Shell Oil Co.*,
  144 F. Supp. 2d 673 (E.D. Tex. 2001) ............................................................................................... 10

*In re Chamber of Commerce of the United States of America*,
  105 F.4th 297 (5th Cir. 2024) ......................................................................................................... 2, 7

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) ........................................................................................................*passim*

*In re Radmax*,
  720 F.3d 285 (5th Cir. 2013) .............................................................................................................. 3

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ....................................................................................................... 2, 3, 7

*La Day v. City of Lumberton*,
  Civ. A. No. 2:011-CV-237-JRG, 2012 WL 928352 (E.D. Tex. Mar. 19, 2012) .................................. 3

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................................ 3, 4

*McCuin v. Texas Power & Light Co.*,
  714 F.2d 1255 (5th Cir. 1983) ............................................................................................................ 9

*Murthy v. Missouri*,
  144 S. Ct. 1972 (2024) ........................................................................................................................ 6

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) .............................................................................................................................. 8

*Van Loon v. Dep't of Treasury*,
  Case No. 6:22-CV-00920-ADA-JCM, 2023 WL 2576436 (W.D. Tex. Feb. 16, 2023),
  *report and recommendation adopted*, 2023 WL 2583926 (W.D. Tex. Mar. 20, 2023) ..................... 3

*Zuazua v. C.R. Eng., Inc.*,
  Civ. A. No. SA-21-0544-FB, 2021 WL 8442046 (W.D. Tex. Aug. 20, 2021) ............................. 9, 10

**STATUTES**

28 U.S.C. § 1393..................................................................................................................9

28 U.S.C. § 1404..................................................................................................................1

**OTHER AUTHORITIES**

Google Maps, Dallas, Texas to Amarillo, Texas,
   https://perma.cc/AX4M-6UJC ......................................................................................6

National Walking Horse Association, Event Page,
   https://nwha.com/event-page ........................................................................................8

TWHBEA, 2023 Annual Report,
   https://twhbea.com/by-the-numbers/ ............................................................................8

Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3809 (4th ed. updated 2024) ......................9

**INTRODUCTION**

Plaintiffs do not contest that this case lacks any connection to this Division. In fact, they appear to argue that the Court may not consider the absence of such a connection, and that this Division is as convenient as all other divisions for this APA case because its merits will be decided on an administrative record. This argument does not meaningfully engage with Fifth Circuit precedent finding that a lack of connection to the chosen division is essential to the analysis of whether transfer to another division is "more convenient." Plaintiffs do not even attempt to argue that any private or public interest factor favors this Division. Instead, Plaintiffs seek to muddy the waters by distinguishing between a "connection" to a division and the "convenience" of that division, but this much is clear: where the chosen forum has no connection whatsoever to a case, and the transferee forum is where the plaintiffs and relevant facts and evidence are located, the transferee forum is clearly more convenient for litigating the case and has the greater interest in its disposition. Therefore, Defendants respectfully request that the Court grant their request to transfer this case from the Amarillo Division to the Dallas Division, pursuant to 28 U.S.C. § 1404(a).

**I. Plaintiffs' Opposition Demonstrates That There is No Connection Between This Suit and the Amarillo Division.**

Plaintiffs admit that venue rests exclusively on the individual plaintiffs' residence in Dallas and offer no connection between this case and the Amarillo Division.[1] Yet Plaintiffs maintain that no such connection is required and even suggest that a lack of connection to the chosen forum is irrelevant. Pls.' Opp'n to Mot. to Transfer Venue at 10, ECF No. 19 ("Pls.' Br.") at 10. That is incorrect, and particularly so where, as here, any factual connection to the case and sources of proof are located in another forum. As Defendants explain in their motion, this is consistent with the Fifth Circuit's instruction in *Volkswagen*, in which the Circuit explained that the district court's "glossing

---

[1] Plaintiffs' declaration that "there are currently 44 Tennessee Walking Horses who are registered to owners that reside in the city of Amarillo, Texas," Decl. of Mark Farrar ¶ 2, ECF No. 19-1 ("Farrar Decl."), does not evince a connection between this case and the Amarillo Division because, as Defendants previously explained, *see* Defs.' Mot. to Transfer Venue at 3 n.3, ECF No. 13 ("Mot."), the plaintiffs do not purport to be one of those owners. The declaration is also unpersuasive as evidence that the Amarillo Division has a local interest in this case for the reasons set forth *infra* at 8.

1

over the fact that not a single relevant factor favors the [plaintiffs'] chosen venue" was an "extraordinary error[]."[2] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008). A Court in this District has reached the same conclusion on similar facts, holding that when "a resident of Dallas" files suit in a different division but "fails to allege any facts that could establish a connection" to that division, the "case belongs in the Dallas Division." Order, *Air Force Major v. Austin*, No. 4:22-cv-0248-P, 2022 WL 3698302, at *1 (N.D. Tex. Apr. 4, 2022) (Pittman, J.) (citation omitted). The lack of any factor supporting the transferor division distinguishes this case from *In re Clarke*, 94 F.4th 502 (5th Cir. 2024), upon which Plaintiffs principally rely, where the court found that multiple private factors cut in favor of the transferor venue, and "[n]ot a single relevant factor" came out in favor of transfer. *Id.* at 513–14, 516.[3]

Critically, nowhere in Plaintiffs' opposition do they claim that any of the relevant public or private factors *favor* the Amarillo Division; at best, they claim those factors are neutral. *See* Pls.' Br. at 12–18; *Volkswagen*, 545 F.3d at 318. And, for the reasons stated below, they are incorrect.

## II. The Dallas Division is Clearly More Convenient Under the Fifth Circuit's § 1404 Analysis.

Defendants have demonstrated good cause to transfer this case because they have shown that the Dallas Division is "clearly more convenient" based on an analysis of the *Volkswagen* factors and a conspicuous lack of connection to the Amarillo Division. *Volkswagen*, 545 F.3d at 315; *see also Clarke*, 94 F.4th at 508–09 (confirming *Volkswagen* factors remain the operative test). Plaintiffs misunderstand Defendants' arguments and Fifth Circuit precedent to suggest that this case's plain lack of connection

---

[2] Plaintiffs argue that Defendants misrepresented *Volkswagen*, asserting that Defendants erroneously "cobbled together" unrelated language from different pages of the opinion. *See* Pls.' Br. at 10. But this assertion betrays Plaintiffs' misunderstanding of *Volkswagen* and other cases in this Circuit, which make clear that a connection between a case and a forum is an essential component of the court's analysis into whether another forum is more convenient. *See infra* at 3 (explaining that the *Volkswagen* court considered the lack of connection between the case and transferor division under its convenience analysis).

[3] Plaintiffs also rely on *In re Chamber of Commerce of the United States of America*, 105 F.4th 297 (5th Cir. 2024). There, the Fifth Circuit found that no factors cut in favor of transfer except for court congestion—and that court congestion, by itself, could not justify transfer. *See id.* at 310–11. That is not the case here.

2

to the Amarillo Division is irrelevant to the Court's convenience analysis under § 1404. *See, e.g.,* Pls.' Br. at 1. To the contrary, as Defendants made clear in their motion, the Fifth Circuit's decisions in *Volkswagen* and *Radmax* require that district courts find that transfer is "clearly more convenient," *Radmax*, 720 F.3d 285, 290 (5th Cir. 2013), where "the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum," *id.* at 288. *See also Volkswagen*, 545 F.3d at 317–18; Mot. at 4. In *Volkswagen*, the fact that "not one of the plaintiffs has ever lived in" and "there is no relevant factual connection to" the plaintiffs' chosen division was weighed under the local interest factor of the court's convenience analysis under § 1404. *Volkswagen*, 545 F.3d at 317–18; *see also Van Loon v. Dep't of Treasury*, Case No. 6:22-CV-00920-ADA-JCM, 2023 WL 2576436, at *4 (W.D. Tex. Feb. 16, 2023), *report and recommendation adopted*, 2023 WL 2583926 (W.D. Tex. Mar. 20, 2023) (local interest factor favored transfer to Austin Division because one plaintiff resided in Austin and no plaintiff resided in transferor division); *La Day v. City of Lumberton*, Civ. A. No. 2:011-CV-237-JRG, 2012 WL 928352, at *3–4 (E.D. Tex. Mar. 19, 2012) ("Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case.").

The Dallas Division is clearly more convenient because the private and public interest factors strongly favor transfer to it.

*Private interest factors:* First, the private interest factors cut strongly in favor of transfer to the Dallas Division because access to sources of proof of the individual Plaintiffs' standing is presumably located in the Dallas Division, where those Plaintiffs reside. Plaintiffs respond by saying that standing issues are "*ancillary* to the merits" and therefore should not be weighed in the transfer analysis. *See* Pls.' Br. at 13. This is wrong. *See Clarke*, 94 F.4th at 513 (location of evidence necessary to establish standing is relevant to private interest factors). In order to prevail on the merits of their claims at the summary judgment phase, Plaintiffs must first affirmatively establish injury-in-fact as a constitutional requisite for Article III standing, and they must do so through competent evidence.[4] *See, e.g., Lujan v.*

---

[4] As Plaintiffs point out, the parties jointly filed a statement that they "agree that Plaintiffs' claims . . .

3

*Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 327 n.4 (5th Cir. 2024). Indeed, the Fifth Circuit found that it was patent error where the petitioner "flagged issues of '[s]tanding and injury'" and the district court "uncritically accept[ed] [the respondent's] claim that the case will not require evidentiary hearings" to resolve those threshold issues. *Clarke*, 94 F.4th at 514. The *Clarke* court explained that the district court's implicit determination that "there was *zero* chance the case would need any evidentiary hearing" despite the petitioner's "observ[ation] that they have had to submit declarations in response to [respondent's] attempts to challenge individual plaintiffs' standing" "abuse[d] both logic and the court's discretion." *Id.* (citation omitted); *id.* at 513 n.15.

Moreover, despite Plaintiffs' implication to the contrary, the Fifth Circuit has not said that a party's claim that plaintiffs' standing may be challenged is "speculative," Pls.' Br. at 13, or otherwise insufficient to demonstrate that access to sources of proof may ultimately be required. The law is just the opposite. In *Clarke*, the Fifth Circuit rejected the district court's "speculation" that an evidentiary hearing would *not* be required, without requiring the petitioners to establish that an evidentiary hearing *would* be required. *Clarke*, 94 F.4th at 514 (noting the "possibility" of evidentiary hearings when considering private interest factors).[5] Therefore, unsurprisingly, Plaintiffs cite no cases to support their proposition that Defendants must prove in their motion to transfer that Plaintiffs' standing will require an evidentiary hearing at or after the summary judgment stage before the Court may consider where the relevant proof resides under its § 1404 analysis.

In any event, Defendants' concerns about Plaintiffs' ability to proffer sufficient evidence

---

are properly resolved on cross-motions for summary judgment on the basis of an administrative record." Pls.' Br. at 13 n.4 (quoting Consent Mot. to Extend Answer Deadline at 1-2, ECF No. 11). This statement relates to the merits and in no way suggests that Plaintiffs are relieved from their constitutional obligation to establish standing at the summary judgment stage or that Defendants must assume that Plaintiffs' yet-to-be-filed affidavits will demonstrate Plaintiffs' standing.

[5] Plaintiffs cite *Clarke* to support the proposition that Defendants must show that "any gains in convenience . . . 'will *actually* materialize' if this case were transferred." Pls.' Br. at 15. But Plaintiffs take that line out of context, as is evident from the Fifth Circuit's ultimate decision in that case that the failure to consider the "possibility" of challenges to standing and evidentiary hearings as a part of the court's convenience analysis under § 1404 is an error.

4

supporting their standing allegations are entirely reasonable; indeed, Defendants identified the necessary elements of proof that Plaintiffs *must* establish.[6] Nor is it obvious that Plaintiffs can satisfy these requirements—and they certainly cannot satisfy them without competent evidence that would be located (if it exists) in the Dallas Division. *Contra* Pls.' Br. at 13 (suggesting that Plaintiffs' standing is "obvious"). Rather, the Amended Complaint is replete with ambiguities about Plaintiffs' standing. Following inquiries from Defendants, Plaintiffs amended their complaint to revise their erroneous allegations related to Ms. Lewis's ownership of Tennessee Walking Horses. Even with those amendments, it is still not clear that Ms. Lewis in fact owns horses that have performed or will perform in Tennessee Walking Horse shows, either at all or with pads or action devices prohibited by the HPA regulations. Instead, Plaintiffs allege merely that Ms. Lewis's horses "were bred to potentially perform with pads and action devices." First Am. Compl. ¶ 29, ECF No. 15. Ms. Lewis has yet to convey what "bred to potentially perform with pads and action devices" means and whether a horse fitting that description "will lose much or all of their value" when the HPA regulations take effect.[7] *See, e.g., id.* ¶¶ 29, 202, 209, 215. The Amended Complaint is also completely silent as to whether any plaintiff has used or will use substances on their horses that are prohibited by the HPA regulations, or whether any of their horses has or likely will present physical conditions that may subject them to disqualification under the challenged Scar Rule provisions. These facts must be established before

---

[6] Nor is the "suggestion that Plaintiffs might seek a preliminary injunction at some point [] utterly speculative," Pls.' Br. at 15. Plaintiffs continue to seek that relief in their Amended Complaint. *See* First Am. Compl., Prayer for Relief ¶ b. Moreover, in the meet-and-confer process prior to Defendants' filing their motion to transfer, Plaintiffs' counsel notified Defendants' counsel that Plaintiffs would likely file a motion for a preliminary injunction should Defendants move to transfer this case. While Plaintiffs now say there is no need for a preliminary injunction "[b]arring unforeseen circumstances," they do not state that they will not move for a preliminary injunction. Pls.' Br. at 15. As explained in Defendants' motion, *see* Mot. at 6, the sources of Plaintiffs' purported proof of irreparable injury and balance of the equities are located in the Dallas Division, not the Amarillo Division.

[7] Plaintiffs also allege that "horses that have been *specifically* bred and trained to compete with action devices and pads cannot simply be re-trained to compete as a flat-shod horse," First Am. Compl. ¶ 213 (emphasis added), but do not necessarily allege—and logically it does not follow—that horses "bred to *potentially* perform with pads and action devices," *id.* ¶ 29 (emphasis added), will similarly lose all economic value.

Plaintiffs can demonstrate standing to challenge certain provisions of the HPA regulations, including but by no means limited to those related to pads and action devices and substances; this is because "standing is not dispensed in gross, . . . plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 144 S. Ct. 1972, 1977 (2024) (citation omitted).

Nor is it proper to conclude that standing will inevitably be decided on a paper record—that was the error that the *Clarke* court corrected. *Clarke*, 94 F.4th at 514. Rather, "[g]iven the possibility of evidentiary hearings, we must assess the third private interest factor—the cost of attendance for willing witnesses." *Id.* "Testifying imposes myriad external costs on witnesses. The third factor attempts to internalize and minimize those costs by favoring the venue that is more convenient from the perspective of willing witnesses." *Id.* The "primary source for testimony regarding standing and injury" will likely consist of Mr. Gould's and Ms. Lewis's testimony as to their ownership of and practices related to Tennessee Walking Horses—and it may require additional testimony from third parties. *Id.* Accordingly, the Fifth Circuit requires that courts "assess[] convenience as a function of distance" and "determin[e] whether the transferee venue is more than one hundred miles from the transferor." *Id.* "Where that is so, the factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *Id.* The primary witnesses in this case would need to travel roughly 350 miles if their testimony is needed. *See* Google Maps, Dallas, Texas to Amarillo, Texas, https://perma.cc/AX4M-6UJC. That is plainly inconvenient. Nor do Plaintiffs identify any relevant witness, much less one residing near their chosen venue. *Clarke*, 94 F.4th at 514. The Dallas Division is therefore significantly more convenient than the Amarillo Division.

*Public interest factors:* Second, the public interest factors strongly favor transfer because the Dallas Division has a "local interest" in deciding this case, and the Amarillo Division does not. In their response, Plaintiffs do not offer any information to refute Defendants' conclusion that no party resides in or claims to suffer an injury based on events that occurred in this Division. Mot. at 6 (citing *Volkswagen*, 545 F.3d at 318). Instead, Plaintiffs argue that it simply does not matter whether Plaintiffs or the claims in this suit have a connection to the Amarillo Division, and the Court need not consider

6

this fact as a part of the fourth public interest factor analysis (or seemingly at all). *See* Pls.' Br. at 15–17. That is flatly incorrect. As explained above, the Fifth Circuit in *Volkswagen* decided that the local interest factor "weighed heavily in favor of transfer" because the plaintiffs lived in the transferee division, the events giving rise to the claims occurred in the transferee division, the witnesses and evidence were located in the transferee division, and "not one of the plaintiffs has ever lived in the [transferor] [d]ivision." *Volkswagen*, 545 F.3d at 317–18. Accordingly, the *Volkswagen* court concluded that "[i]n short, there is no relevant factual connection to" the transferor division and therefore transfer was warranted. *Id.* at 318.

This is wholly consistent with *Clarke*, in which the Fifth Circuit explained that, to identify local interests, courts should consider "significant connections between a particular venue and the events that gave rise to a suit" and "the interest of *non-party citizens* in adjudicating the case." *Clarke*, 94 F.4th at 511 (citation omitted). Indeed, the court emphasized that "[c]onsiderations such as 'the location of the injury, witnesses, and the [p]laintiff's residence,' . . . are useful proxies for determining what local interests exist in each venue." *Id.* (internal citation omitted). Here, individual Plaintiffs' residence, the location of the (purported) injury, and witnesses are all located in the Dallas Division. Plaintiffs allege that they will be harmed by the HPA regulations because it will cause the horses that they own, which presumably are located where Plaintiffs reside—in the Dallas Division—to lose their value.

Nor is this the type of APA case that has uniform impact across the country. *Contra* Pls.' Br. at 17. The Fifth Circuit has recognized that there are certain types of APA cases where "the effect of this suit is completely diffuse." *Chamber of Commerce*, 105 F.4th at 309 (citing *Clarke*, 94 F.3d at 512). Plaintiffs' challenge to the HPA regulations, by contrast, is highly geographically focused. Plaintiffs challenge the regulations' application to the conduct that occurs at Tennessee Walking Horse shows, by prohibiting certain practices and changing rules for inspectors *at those shows*. *See e.g.*, First Am. Compl. ¶¶ 202, 209, 214, 219, 226, 232, 237, 245, 251, 257 (describing harm in terms of ability to show horses and fair competition). The effects of the regulations will therefore primarily be felt in Tennessee, where the vast majority of Tennessee Walking Horse shows are located. And although Plaintiffs do not refute Defendants' claim that there has never been a Tennessee Walking Horse show

7

in the Amarillo Division, there have been multiple Tennessee Walking Horse shows in multiple counties in the Dallas Division in recent years. *See, e.g.*, National Walking Horse Association, Event Page, https://nwha.com/event-page (last accessed Oct. 14, 2024).

And while Plaintiffs claim that there are "currently 44 Tennessee Walking Horses who are registered to owners that reside in the city of Amarillo, Texas," *see* Farrar Decl. ¶ 2, none of those owners are parties to this case, and Plaintiffs do not suggest that any of them have exhibited or will exhibit their horses in a Tennessee Walking Horse show such that they would have an interest in the outcome of this litigation. Nor do Plaintiffs suggest that any of these owners utilize pads or action devices, or substances that will be prohibited by the HPA regulations, or that their horses exhibit physical conditions that are likely to subject them to disqualification under the Scar Rule. Moreover, the two Dallas-based individual plaintiffs in this case—by themselves—own 41 Tennessee Walking Horses. And there are 234,518 registered Tennessee Walking Horses alive today—by Plaintiffs' own evidence Amarillo has only 0.02% of those. *See* TWHBEA, 2023 Annual Report, https://twhbea.com/by-the-numbers/ (last accessed Oct. 14, 2024). Therefore, adjudication of this case would not be "regarded as equally important by citizens" in all judicial districts, and the Dallas Division has a stronger local interest in this case relative to the Amarillo Division based on Plaintiffs' and their claims' connections to Dallas. *See Clarke*, 94 F.4th at 512 ("The transfer analysis is *relative*.").

Finally, Plaintiffs' argument that systemic integrity and fairness considerations may not be weighed in a convenience analysis because they do not fall under the four enumerated public interest factors is unavailing. *See* Pls.' Br. at 18–19. As explained in Defendants' motion, Mot. at 7, the public interest factors collectively are aimed at "systemic integrity and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988), and therefore, considerations of systemic integrity and fairness that do not fall under the enumerated public interest factors should nevertheless be evaluated as a part of the Court's § 1404 analysis. Indeed, it is wholly inconsistent with the goal of § 1404 analysis to suggest that the Court should ignore overarching considerations of systemic integrity and fairness because they do not strictly fit into one of the non-exclusive and non-exhaustive enumerated factors. And, as explained in Defendants' motion, Mot. at 7–8, if plaintiffs can choose to file a case in a division with no

8

connection whatsoever to the suit (as Plaintiffs acknowledge is the case here) based on their residence or events giving rise to their claims in a *different* division in the district, it would upend the integrity and fairness of the judicial system.[8]

### III. District Courts in This District and Other Districts in Texas Routinely Transfer Cases That Lack Any Connection to the Division in Which They Were Filed.

Equally unavailing is Plaintiffs' attempt to distinguish the district court decisions, cited in Defendants' motion, finding that transfer to another division is appropriate under § 1404(a). *See* Pls.' Br. at 11–12.

Plaintiffs first argue that these cases do not support the proposition that transfer is appropriate where, as here, a case lacks a connection to the plaintiff's chosen forum. To the contrary, in each of the cited district court cases that addressed this issue, the decision to transfer was expressly informed by the absence of a connection to the chosen forum. In *Zuazua*, the court repeatedly pointed out the lack of "any legally relevant factual nexus" with the San Antonio Division in *sua sponte* transferring the case to the Del Rio Division. *See Zuazua v. C.R. Eng., Inc.*, Civ. A. No. SA-21-0544-FB, 2021 W 8442046, at * 2-3 (W.D. Tex. Aug. 20, 2021). In *Campbell*, the court noted four times that the case had no connection to the Dallas Division in *sua sponte* transferring the case to the Fort Worth Division. *See* Order at 2, 7, 8, *Campbell v. Garland*, No. 3:19-CV-1887-L (N.D. Tex. July 21, 2021), ECF No. 50 (Lindsay, J.). In a related *Campbell* case, the court rested its *sua sponte* decision to transfer to the Fort Worth Division entirely on "[t]here being no apparent connection between this case and th[e] [Dallas] division." *See* Order, *Campbell v. Barr*, No. 3:20-CV-1605-G (N.D. Tex. June 19, 2020), ECF No. 6 (Fish, J.). In *Chapman*, the court emphasized the plaintiff's "lack of personal connection to the El Paso Division and the absence of a factual connection to the El Paso Division" in transferring the case to the Austin Division. *See Chapman v. Dell, Inc.*, No. EP-09-CV-7-KC, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009). Finally, in *Hanby*, the court pointed out that "[t]he connection of the Eastern

---

[8] Plaintiffs' citation to *McCuin v. Texas Power & Light Co.* is inapposite. 714 F.2d 1255 (5th Cir. 1983). The Fifth Circuit decided *McCuin* years prior to the repeal of 28 U.S.C. § 1393, which had provided that when a plaintiff sued a resident of a particular division within a federal district, venue was required to be placed in the division in which the defendant resided. Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3809 (4th ed. updated 2024).

9

District to this case appears nonexistent" and transferred the case to another district. *See Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001).

Plaintiffs' second assertion, that the cited cases—in addition to relying on the lack of a connection to the chosen forum—also relied on the presence of evidence or witnesses in another forum, does not undermine Defendants' position that transfer is appropriate. *See* Pls.' Br. at 11. While this case (on the merits) will be decided on an administrative record and thus does not implicate the same fact-intensive evidentiary review such as, for instance, a personal injury suit, Plaintiffs first must establish, as a factual matter, that they have standing. *See Zuazua*, 2021 WL 8442046, at *1–2. And no authority gives Plaintiffs *carte blanche* to choose this Division over the only other division in this District that actually has a factual connection to this case—Dallas. As discussed in Defendants' motion, the only evidence that may be needed in this case is located in Dallas, and every other factual assertion giving rise to Plaintiffs' claims points away from Amarillo.

## CONCLUSION

For the reasons set forth above, this case should be transferred to the Dallas Division.

Dated: October 16, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Allyson R. Scher*
ALLYSON R. SCHER (DC Bar No. 1616379)
CRISTEN C. HANDLEY (MO Bar No. 69114)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Telephone: (202) 514-9836
Facsimile: (202) 616-8460
Email: allyson.r.scher@usdoj.gov

*Counsel for Defendants*